**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35004**

| | | |
|---|---|---|
| IN THE INTEREST OF:  JOHN DOE, A MINOR CHILD | ) | |
| STATE OF IDAHO, | ) | **2009 Opinion No. 21** |
| Plaintiff-Respondent, | ) | **Filed:  March 31, 2009** |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| JOHN DOE, | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County.  Hon. R. Barry Wood, District Judge.  Hon. Mark A. Ingram, Magistrate.

Decision of the district court affirming the magistrate's decree, <u>reversed</u>.

Capitol Law Group; David A. Heida, Gooding, for appellant.  David A. Heida argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued

GUTIERREZ, Judge

John Doe appeals from the district court's decision affirming the magistrate's decree that John Doe falls within the purview of the Juvenile Corrections Act for violation of a juvenile curfew ordinance.  Specifically, he challenges the constitutionality of the ordinance which he violated.  We reverse the decision of the district court and hold the ordinance unconstitutional.

**I.**

**BACKGROUND**

John Doe, a minor, was the passenger in a vehicle stopped in Wendell, Idaho, at 1:30 a.m., for a traffic infraction.  Doe was supposed to be staying at a friend's house that night, but had sneaked out to meet two other friends to look for a party.  Doe was cited for violating the city's curfew ordinance.  The Wendell ordinance states:

<u>Section 1. Curfew Hours, Violations, and Exceptions.</u>

      **A. Night Time Curfew:** It shall be unlawful for any minor person under the age of eighteen (18) years to loiter, idle, wander, stroll, play, or otherwise be upon the public streets, highways, roads, sidewalks, alleys, parks, playgrounds, or other public grounds, or public places, building, or other property generally open to public use, or vacant lots within the City of Wendell, between the hours of 11:00 o'clock p.m. and 5:00 o'clock a.m.

      **B. Exceptions:** The provisions of this section do not apply to a minor accompanied by his or her parents or legal guardians, or where the minor is upon an emergency errand or other legitimate business directed by his or her parents or legal guardian or custodian or school, having in their possession some form of documentation as to the business to be performed.

<u>Section 4.  Responsibility of Parents, or Other Person(s).</u>  It shall be unlawful for the parents or legal guardian of a minor under the age of 18 years to knowingly permit such minor to be in violation of any section of this ordinance.  It shall also be unlawful for any person by any act to knowingly encourage, aid, or otherwise facilitate the violation of any section of this ordinance by any person under the age of eighteen (18) years.

<u>Section 5.  Penalties.</u>  Any person in violation of any section or provision of this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be punished as provided in Ordinance Number 192 of the City of Wendell, Idaho. Each violation of any section of this ordinance shall constitute a separate offense.

Doe moved to dismiss the petition in juvenile court on the ground that the ordinance is void for vagueness, an overbroad violation of First Amendment rights, a violation of the Equal Protection Clause, and a violation of a parent's fundamental right to parent a child.  The magistrate denied Doe's motion, and Doe conditionally admitted to the violation, reserving his right to appeal from the denial of his motion.  The district court affirmed the magistrate's denial.  On appeal, Doe raises the same constitutional challenges to Wendell's curfew ordinance, while the state challenges this Court's jurisdiction to hear his appeal.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly.  *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008).  We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.  *Id.*  If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.  *Id.*

2

When this Court considers a claim that a statute or ordinance is unconstitutional, we review the trial court's ruling *de novo* since it involves purely a question of law. *State v. Korsen,* 138 Idaho 706, 711, 69 P.3d 126, 131 (2003); *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998); *State v. Hansen*, 125 Idaho 927, 930, 877 P.2d 898, 901 (1994); *State v. Laramore*, 145 Idaho 428, 430, 179 P.3d 1084, 1086 (Ct. App. 2007). There is a strong presumption of the validity of an ordinance, *City of Lewiston v. Mathewson*, 78 Idaho 347, 350, 303 P.2d 680, 682 (1956), and an appellate court is obligated to seek an interpretation of an ordinance that upholds its constitutionality. *Cobb*, 132 Idaho at 197, 969 P.2d at 246; *State v. Newman*, 108 Idaho 5, 13 n.12, 696 P.2d 856, 864 n.12 (1985).

## III.

## DISCUSSION

### A. This Court has Jurisdiction to Consider Doe's Appeal

The state contends that Doe was not yet found to be "within the purview" of the Juvenile Corrections Act (JCA or Act) when the magistrate denied his motion to dismiss and therefore he cannot appeal as a right under Idaho Code Section 20-528, which authorizes appeals from "orders or final judgments made by any court in matters affecting a juvenile within the purview of this act." The state asserts that this Court therefore lacks jurisdiction to hear Doe's appeal because Doe took his appeal from a non-appealable order without perfecting his permissive appeal. The state did not raise this objection to Doe's intermediate appeal to the district court. Nevertheless, we must consider this question because whether a court lacks jurisdiction is a question of law that may be raised at any time, *Pizzuto v. State*, 127 Idaho 469, 471, 903 P.2d 58, 60 (1995), and over which appellate courts exercise free review, *State v. Barros*, 131 Idaho 379, 381, 957 P.2d 1095, 1097 (1998); *see also State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004).

Doe appealed from the magistrate's oral denial of his motion to dismiss, a pre-adjudicatory order. After accepting Doe's conditional admission of violating Wendell's curfew ordinance, the magistrate orally certified the question of the constitutionality of the ordinance for appeal prior to disposition. The magistrate then transferred the case to Doe's home county for final disposition. The record before us does not disclose any final disposition.

In a permissive appeal from an interlocutory order, a party must first obtain certification from the magistrate, and then move the district court to hear the appeal. Idaho Appellate Rule

12. Only after the district court has accepted the appeal will the party file a notice of appeal and begin the appellate process. *Id.* However, not all flaws in the appellate process are jurisdictional as the state asserts. *State v. McCarthy*, 133 Idaho 119, 123, 982 P.2d 954, 958 (Ct. App. 1999). "Failure of a party to timely take any . . . step in the appellate process [other than failure to timely file a notice of appeal] shall not be deemed jurisdictional, but may be grounds only for such action or sanction as the Supreme Court deems appropriate, which may include dismissal of the appeal." I.A.R. 21. A motion for an appellate court's acceptance of an interlocutory appeal is not a notice of appeal, but qualifies as "any other step" in the appellate process, which I.A.R. 21 provides is not jurisdictional. *McCarthy*, 133 Idaho at 123, 982 P.2d at 958. Indeed, the Idaho Supreme Court has accepted several interlocutory appeals without the appellant having obtained full permission as required by I.A.R. 12. *See Taylor v. Maile*, 142 Idaho 253, 257, 127 P.3d 156, 160 (2005); *Idaho Dep't of Labor v. Sunset Marts Inc.*, 140 Idaho 207, 209, 91 P.3d 1111, 1113 (2004); *North Pacific Ins. Co. v. Mai*, 130 Idaho 251, 253, 939 P.2d 570, 572 (1997); *Kindred v. Amalgamated Sugar Co.*, 118 Idaho 147, 149, 795 P.2d 309, 311 (1990). In each case, the Supreme Court treated the issue as a discretionary matter in deciding whether to allow the appeals to proceed, and exercised its discretion in favor of resolving the cases on the merits. *See also McCarthy*, 133 Idaho at 123, 982 P.2d at 958.

After denying Doe's motion to dismiss and engaging in a colloquy with Doe, the magistrate stated, "I'll accept the admission and certify the question prior to disposition." As in *McCarthy*, Doe in this case sought and obtained certification from the magistrate to file an interlocutory appeal, albeit an oral certification. Doe thereafter filed his notice of appeal. The district court heard the appeal and rendered a decision, without the state ever raising the issue of perfection of the appeal. The failure to obtain the permission of the district court in this interlocutory appeal did not deprive the district court of jurisdiction. Accordingly, the state's failure to raise this procedural objection in the district court waived the issue. *See McCarthy*, 133 Idaho at 123-24, 982 P.2d at 958-59. Under these circumstances, we will treat this appeal as an appeal by permission under I.A.R. 12. Because this appeal was brought pursuant to I.A.R. 12, we do not need to consider whether it qualifies as an appeal of right under I.C. § 20-528.

B.     The City of Wendell's Curfew Ordinance is Unconstitutional

4

Doe asserts that the curfew ordinance violates the Idaho and United States constitutions three different ways.[1] First, he asserts that the ordinance is void for vagueness because several phrases fail to inform the community of the conduct that is prohibited, or allow law enforcement officers too much discretion in the enforcement of the ordinance. *See Laramore*, 145 Idaho at 430, 179 P.3d at 1086; *see also Cobb,* 132 Idaho at 197, 969 P.2d at 246. Doe's second challenge to the curfew ordinance is that it is overbroad because it prohibits legitimate First Amendment conduct. Finally, Doe asserts that the curfew ordinance violates equal protection because it does not provide an exception for the legitimate exercise of First Amendment rights. Because we find the overbreadth challenge to be dispositive, we focus our analysis on this issue.

The overbreadth doctrine is aimed at statutes or ordinances which, though designed to prohibit legitimately regulated conduct, include within their prohibitions constitutionally protected freedoms. *Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984); *State v. Richards*, 127 Idaho 31, 35, 896 P.2d 357, 361 (Ct. App. 1995). Even when the government has a legitimate and compelling purpose supporting the legislation, that purpose cannot be accomplished by means that "broadly stifle fundamental personal liberties" when "less drastic means for achieving the same basic purpose" are available. *Shelton v. Tucker*, 364 U.S. 479, 488 (1960). When an ordinance purports to regulate conduct, it will be subject to First Amendment scrutiny only if the regulation "impose[s] a disproportionate burden upon those engaged in protected First Amendment activities" or "has the incidental effect of burdening" expression. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 702-04 (1986).

> Whenever the First Amendment rights of freedom of religion, speech, assembly, and association require one to move about, such movement must necessarily be protected under the First Amendment. Restricting movement in those circumstances to the extent that First Amendment rights cannot be exercised without violating the law is equivalent to a denial of those rights.

*City of Maquoketa v. Russell*, 484 N.W.2d 179, 183 (Iowa 1992).

---

[1] Although Doe contends that both the Idaho and United States constitutions were violated in each of his claims, he provides no cogent reason why the Idaho Constitution should be differently applied to any part of this case. Consequently, this Court relies on judicial interpretation of the federal constitution in its analysis of Doe's claims, as it has done previously. *See, e.g.*, *State v. Richards*, 127 Idaho 31, 896 P.2d 357 (Ct. App. 1995); *see also Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 791 P.2d 1285 (1990); *State v. Laramore*, 145 Idaho 428, 179 P.3d 1084 (Ct. App. 2007).

> If, for any reason, people cannot walk or drive to their church, their freedom to worship is impaired. If, for any reason, people cannot walk or drive to the meeting hall, freedom of assembly is effectively blocked. If, for any reason, people cannot safely walk the sidewalks or drive the streets of a community, opportunities for freedom of speech are sharply limited. Freedom of movement is inextricably involved with freedoms set forth in the First Amendment.

*Ervin v. State,* 163 N.W.2d 207, 210 (Wis. 1968).

The ability to be in a public place is a necessary precursor to the exercise of First Amendment rights. The City of Wendell's curfew ordinance burdens those involved in First Amendment activities equally with all other curfew violators. Regardless of the purpose for which the juvenile is in a public place after 11 o'clock at night, he is in violation of the curfew unless he qualifies for one of the exemptions. Therefore, the Wendell curfew ordinance's regulation of conduct burdens expression by limiting a minor's ability to be present in public places.

Because Doe has not shown that his own First Amendment rights have been infringed by enforcement of the ordinance, he challenges the statute as facially overbroad. Facial attacks for overbreadth are not favored in the law and are allowed only in limited circumstances. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *State v. Goodrick*, 102 Idaho 811, 812, 641 P.2d 998, 999 (1982). If a statute can be constitutionally applied to a defendant's individual conduct, the defendant normally will not be heard to complain that the statute violates the constitutional rights of third persons who do not stand accused. *Broadrick*, 413 U.S. at 612; *Richards*, 127 Idaho at 35, 896 P.2d at 361; *Goodrick*, 102 Idaho at 812, 641 P.2d at 999. Such challenges are allowed, however, where the statute or ordinance in question might impermissibly infringe upon speech or conduct protected by the First Amendment. *Richards*, 127 Idaho at 35, 896 P.2d at 361. As explained by the United States Supreme Court:

> In those cases, an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985). In short, a facial overbreadth challenge is allowed only when there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

6

Here, the Wendell curfew ordinance does not specifically target First Amendment activities; rather it aims to control certain conduct deemed harmful to the well-being of the city. However, by controlling conduct, the ordinance also controls expression. The curfew prevents minors from being in *any* public place after 11 o'clock p.m., subject to the exceptions, thereby substantially restricting expression in all public forums for one-quarter of the day. *See, e.g.*, *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997). If a minor wishes to attend a midnight church service, participate in a city council meeting, or join a protest voicing any number of social or political views, he must first weigh that desire against the possibility of being cited for violating the curfew ordinance. Minors are thus forced to choose between foregoing the exercise of First Amendment rights or risking misdemeanor punishment if the chosen activity lasts beyond 11 o'clock p.m. Because the Wendell curfew ordinance creates a realistic danger of significantly compromising recognized First Amendment protections of parties not before the court, we must determine whether it is unconstitutional for facial overbreadth. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1072 (5th Cir. 1981).

Where a facial overbreadth challenge is presented, our inquiry is to "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *State v. Bitt*, 118 Idaho 584, 588, 798 P.2d 43, 47 (1990); *Richards*, 127 Idaho at 35, 896 P.2d at 361. An ordinance is void on its face when it does not aim specifically at evils within the allowable area of state control but sweeps within its ambit other activities that constitute an exercise of First Amendment rights. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). The facial overbreadth "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct--even if expressive--falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick*, 413 U.S. at 615. "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* Substantial overbreadth cannot be reduced to an exact definition. *Taxpayers for Vincent*, 466 U.S. at 800. Overbreadth is not substantial, if "despite some possibly impermissible application, the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" *Secretary of State of Md. V. J. H.*

7

*Munson Co.*, 467 U.S. 947, 964-65 (1984) (quoting *U.S. Civil Service Comm'n v. Letter Carriers*, 413 U.S. 548, 580-81 (1973)). "[T]he requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself--the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the court." *Taxpayers for Vincent*, 466 U.S. at 800. The test may be otherwise stated as whether the statute is unconstitutional in a substantial portion of the cases to which it applies. *Regan v. Time, Inc.*, 468 U.S. 641, 650 (1984); *Richards*, 127 Idaho at 35, 896 P.2d at 361. "If the overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." *Brockett*, 472 U.S. at 503-04.

Other state and federal jurisdictions which have considered an overbreadth challenge to a juvenile curfew ordinance have used one of three methods to determine whether the overbreadth is real and substantial. *Nunez*, 114 F.3d 935, used the three-part test for time, place, and manner restrictions developed in *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). A more common analytical framework adopts the proposition that minors' First Amendment rights are fundamental, and may be impaired by a curfew to a greater degree than adults' rights could be only if the three factors enunciated in *Bellotti v. Baird*, 443 U.S. 622, 633-34 (1979), are satisfied. *See Johnson*, 658 F.2d at 1072-74; *Russell*, 484 N.W.2d at 184-86; *City of Milwaukee v. K.F.*, 426 N.W.2d 329, 338-39 (Wis. 1988). In *Bellotti*, the United States Supreme Court declared that there are three reasons which justify "the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature, manner; and the importance of the parental role in child rearing." *Bellotti*, 443 U.S. at 634. That case dealt with the ability of a state to require parental consent prior to allowing an abortion to be performed on a minor. Some courts have subsequently applied the three factors to overbreadth challenges in juvenile curfew ordinance cases, although the majority of courts to use *Bellotti* in relation to a juvenile curfew ordinance have done so in the equal protection context. *See, e.g.*, *Hutchins v. District of Columbia*, 188 F.3d 531, 541 (D.C. Cir. 1999); *Nunez*, 114 F.3d at 944-45; *Waters v. Barry*, 711 F. Supp. 1125, 1133-37 (D. D.C. 1989).

The third, and most common, method of determining whether overbreadth is real and substantial is a true balancing of whether the curfew ordinance or statute is so broadly written

8

that it unduly restricts the exercise of First Amendment activities to a degree determined to be unacceptable. Ordinances determined to be narrowly tailored have been upheld as constitutional, *see, e.g.*, *Bykofsky v. Borough of Middletown*, 401 F. Supp. 1242, 1258-61 (D. Pa. 1975); *In re Maricopa County Juvenile Action No. JT9065297*, 887 P.2d 599, 608-10 (Ariz. Ct. App. 1994); *In re J.M.*, 768 P.2d 219, 224-25 (Colo. 1989), while those determined to be overbroad have been struck down as unconstitutional, *see, e.g.*, *Alves v. Justice Court of Chico Judicial District*, 306 P.2d 601, 605 (Cal. Ct. App. 1957); *W.J.W. v. State*, 356 So. 2d 48, 50 (Fla. Dist. Ct. App. 1978); *Allen v. City of Bordentown*, 524 A.2d 478, 483 (N.J. Super. Ct. Law Div. 1987); *Hayes v. Municipal Court of Oklahoma City*, 487 P.2d 974, 979-81 (Okla. Crim. App. 1971).

For example, in *Bykofsky*, 401 F. Supp. 1242, a local curfew ordinance which provided an exception for the exercise of First Amendment rights was upheld as constitutional against an overbreadth challenge. By allowing minors to participate in First Amendment activities during curfew hours, the Borough of Middletown limited its restriction to non-communicative conduct only. Therefore, the curfew regulated pure conduct unrelated to speech or other First Amendment rights and survived the balancing test of an overbreadth challenge. *Id*. at 1258-61. Similarly, in *J.M.*, 768 P.2d 219, the Supreme Court of Colorado was faced with an overbreadth challenge to a nighttime juvenile loitering ordinance. Loitering was specifically defined in the ordinance to include conduct only. The Court reasoned, "Although the ordinance prevents minors from loitering and staying unnecessarily upon the streets, it does not restrict those minors who are using the streets while actually in the process of going to or from protected activities." *Id.* at 224-25. While the unusual case may arise in which the nighttime loitering ordinance curtails First Amendment activities, the overbreadth of the ordinance is not "substantial in relation to its plainly legitimate sweep." *Id.* at 225. Both *J.M.* and *Bykofsky* illustrate the manner in which the overbreadth doctrine is inapplicable to ordinances regulating pure conduct as opposed to expressive conduct and pure speech.

Conversely, in *Alves*, 306 P.2d 601, the California Court of Appeals found the local juvenile curfew ordinance to be unconstitutionally overbroad using the balancing test. The only exceptions to the curfew were for minors accompanied by a parent or legal guardian, or minors whose presence was "connected with, and required by, some legitimate business, trade, profession or occupation." *Id.* at 602. The purpose of the curfew was to achieve "better control of juveniles during the late hours of the night." *Id.* at 605. However, in accomplishing that

objective, the curfew prohibited "all minors actually going to or coming from, or being at night classes, library study, games, dances or other school activities, church functions or the theater." *Id.* Similarly, the District Court of Appeals of Florida struck down a local juvenile curfew ordinance as unconstitutionally overbroad. *W.J.W.*, 356 So. 2d 48. The Pensacola ordinance at issue in *W.J.W.* allowed exceptions only if the minor was accompanied by a parent or guardian or could produce credentials certifying his or her employment. The ordinance "prohibit[ed] children under the age of sixteen from participating in school, recreational and church activities, to name a few, because in going to or coming from the activities, the child would be upon a street, alley, park or other public place." *Id.* at 50. The court concluded that restraining children in this manner was incompatible with the "freedoms of speech, association, peaceful assembly and religion" available to all citizens through the state and federal constitutions. *Id.* Finally, in *Allen*, 524 A.2d 478, the New Jersey Superior Court considered a juvenile curfew ordinance which allowed juveniles to be out after curfew when accompanied by a parent or guardian, upon an emergency errand or legitimate business, or under other emergency conditions. The court concluded that the ordinance was unconstitutionally overbroad because the restriction of fundamental personal liberties, including those under the First Amendment, was "unnecessarily sweeping." *Id.* at 483.

We are persuaded that this third method of analysis is the most appropriate for a First Amendment overbreadth challenge to a curfew ordinance in Idaho. Here, the City of Wendell's curfew ordinance prohibits minors from being in public places after 11 o'clock p.m. and before 5 o'clock a.m. There are three exceptions to the curfew: if the minor is accompanied by a parent or guardian, if the minor is on an emergency errand, or if the minor is engaged in legitimate business authorized by a parent or school. The curfew was enacted to "provide order and to promote the safety and welfare of the residents of the City of Wendell, Idaho." However, by restricting minors' access to all public places during curfew hours, the ordinance severely inhibits the ability of minors to exercise their First Amendment rights for one-quarter of the day. We have already determined that the ability to be in a public place is a necessary precursor to the exercise of First Amendment rights. Minors in Wendell are precluded from attending midnight church services unless accompanied by a parent or guardian or in possession of a permission slip. They cannot participate in City Council meetings that run late, political caucuses, or general

gatherings related to political and social opinions. A minor's freedom of speech, freedom of religion, and freedom of association are all curtailed by the curfew ordinance.

As with the curfew ordinances at issue in *Alves, W.J.W.* and *Allen,* Wendell's curfew ordinance is unconstitutionally overbroad. This overbreadth is both real and substantial. Wendell's curfew ordinance broadly stifles fundamental personal liberties, even though "less drastic means for achieving the same basic purpose" are available. *Shelton*, 364 U.S. at 488. By failing to provide an exception for the exercise of First Amendment rights, the ordinance does not aim specifically at evils within the allowable area of state control but rather sweeps within its ambit other activities that constitute an exercise of First Amendment rights. *Thornhill,* 310 U.S. at 97. There is a real and substantial risk that the ordinance will inhibit the speech of parties not before the court. *See Taxpayers for Vincent*, 466 U.S. at 800. Therefore the Wendell curfew ordinance is void on its face.

## IV.

## CONCLUSION

Although Doe did not fully perfect his appeal according to I.A.R. 12, we treat the appeal as permissive and consider the merits of his claims. The City of Wendell's curfew ordinance is unconstitutionally overbroad. Without an exception for the exercise of First Amendment rights, the curfew prohibits legal, constitutionally protected expressive conduct. The overbreadth of the curfew ordinance is real and substantial, and harms the rights of third parties not before the court. Because we determine the Wendell curfew ordinance to be unconstitutional, we reverse the decision of the district court affirming the magistrate's decree.

Chief Judge LANSING and Judge PERRY **CONCUR**.

11